UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGELETTE WARING-STARNES, | ECF CASE |
| Plaintiff, | No.: _____ |
| v. | COMPLAINT |
| THE JERICHO PROJECT, | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Angelette Waring-Starnes ("Waring-Starnes"), by her attorneys, Lipsky Lowe LLP, brings this action against Defendant The Jericho Project ("Jericho Project") and, on information and belief, alleges as follows:

NATURE OF THE ACTION

1. This action arises from Defendant Jericho Project's discrimination and retaliation against Plaintiff Waring-Starnes, a Black woman who served as its Program Director. After Plaintiff complained about discriminatory treatment and a hostile work environment, Defendant failed to address her concerns and instead subjected her to escalating discipline that ultimately led to her termination.

2. Rather than investigate Plaintiff's complaints, Defendant minimized and dismissed them, including through hostile and demeaning conduct by senior Human Resources personnel. Shortly after Plaintiff engaged in protected activity, Defendant disciplined her for involuntary medical absences caused by a serious illness, despite acknowledging that she required emergency medical care. Defendant then relied on that discipline to deny Plaintiff professional opportunities and to justify further warnings based on vague, subjective criticisms.

3. Defendant's actions reflect a pattern of punishing Plaintiff for raising complaints of race discrimination and for refusing to accept disparate and degrading treatment. Plaintiff brings this action to hold Defendant accountable for violating federal, state, and local anti-discrimination laws and to obtain relief for the harms caused by Defendant's unlawful conduct.

4. Accordingly, Waring-Starnes asserts claims of race and gender discrimination and retaliation for engaging in protected activity in violation of 42 U.S.C. § 1981 et seq. ("§ 1981"); the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), as well as retaliation in violation of the New York Labor Law § 740 ("NYLL").

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Waring-Starnes's claims pursuant to 28 U.S.C. § 1343 as Waring-Starnes has asserted claims that arise under federal laws of the United States.

6. This Court has supplemental jurisdiction over Waring-Starnes's state law claims pursuant to 28 U.S.C. § 1367 as those claims are so related to the federal claims in this action such that they form part of the same case or controversy.

7. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## THE PARTIES

8. Plaintiff Waring-Starnes was, at all relevant times, an adult individual, residing in New York County, NY.

9. Defendant The Jericho Project is a domestic not-for-profit organization that is organized and existing under the laws of the State of New York and has its headquarters in New York, New York. Jericho Project serves individuals and families experiencing homelessness or housing insecurity.

## STATEMENT OF FACTS

10. In February 2022, Jericho Project hired Waring-Starnes as a Program Director at its Bronx, New York location. In that role, Waring-Starnes was responsible for developing, implementing, coordinating, and evaluating programs to ensure services were accessible, inclusive, and well known to eligible participants.

11. In the summer of 2023, Waring-Starnes began receiving complaints from her case managers that they were unable to work effectively with Building Manager Louis Gonzalez in connection with the program she directed. These complaints concerned, among other things, untimely lease renewals and vacant units that could not be filled due to long-pending renovations.

12. When Waring-Starnes's case managers attempted to coordinate with Gonzalez regarding these issues, he responded rudely and obstructively.

13. In or about July 2023, in response to these concerns, Waring-Starnes attempted to take a more active role in addressing the building-related issues directly with Gonzalez. Gonzalez reacted with hostility and opposition.

14. When Waring-Starnes raised consumer complaints with Gonzalez, he responded in an aggressive and confrontational manner and abruptly told her that she had no right to speak to clients.

15. Thereafter, Waring-Starnes and Gonzalez continued to experience repeated workplace conflicts.

16. On or about September 19, 2023, Waring-Starnes emailed Human Resources Director Jeff Katz to formally complain about Gonzalez's conduct. In that email, she reported ongoing disrespect in the workplace and explained that the conduct was interfering with her ability to perform her job.

17. Waring-Starnes further reported that the disrespectful treatment was not limited to Gonzalez. She stated that multiple members of management—including Davia Steely, Contracts & QA Director; Cynthia Adams, Operations Senior Director; Rebecca Cruz, Operations Supervisor to Gonzalez; and Kenya Evans-Pickney, Chief People Officer—had subjected her to disrespectful and disparate treatment during her employment.

18. Based on this conduct, Waring-Starnes reported that she was experiencing a "hostile work environment."

19. In October 2023, Waring-Starnes met with Katz and Human Resources Manager Angela Zakers regarding her complaint.

20. During the meeting, when Waring-Starnes attempted to explain the conduct she found objectionable, Katz repeatedly interrupted her and characterized her complaint as "nonsensical" and "disjointed."

21. When Waring-Starnes asked about the next steps in the process, Katz responded that he was there to ask questions, not answer them, and stated that he had "more important concerns" than addressing her complaint.

22. When Waring-Starnes continued to seek clarification, Katz stated, "Oh, you are still asking questions? This interview is over," and redirected his camera in the virtual meeting, apparently to signal his refusal to participate further.

23. At that point, Zakers intervened, requested that the meeting pause, and proposed that it continue with Zakers serving as the lead. Waring-Starnes agreed, and Zakers completed the interview, which lasted approximately thirty minutes.

24. At the conclusion of the meeting, Katz returned and apologized for his conduct while laughing. Waring-Starnes found this apology dismissive and demeaning.

25. Following the meeting, Waring-Starnes's complaint was escalated to Jericho Project's Employee Assistance Program ("EAP"). She spoke with EAP representative Marjorie Hirsch and complained specifically about Katz's conduct during the HR meeting.

26. The EAP thereafter relayed the complaint to Chief Operating Officer Doreen Straka.

27. On November 5, 2023, Straka emailed Waring-Starnes acknowledging receipt of her complaint and stating that she would follow up.

28. In early November 2023, Straka met with Waring-Starnes, who described Katz's conduct in detail, including his interruptions, dismissal of her concerns, attempt to end the meeting, and laughing apology. Waring-Starnes explained that Katz's conduct was demeaning and felt discriminatory based on her race.

29. During that meeting, Straka acknowledged that the conduct described was "unfortunate" and "unacceptable," but speculated that Katz may have laughed as a "self-defense response." Straka stated that she would look into the matter and speak with Katz.

30. Straka further stated: "I know you have been discriminated against as a Black woman. He should not speak to you in that manner. I know you might not think that, as a white woman, I will investigate, but give me a chance." The meeting ended shortly thereafter.

31. On November 15, 2023, Straka emailed Waring-Starnes stating that she had spoken with Katz but was unavailable to schedule a follow-up meeting at that time.

32. On November 20, 2023, Waring-Starnes became acutely ill and physically unable to work. She was nearly immobile, had limited ability to function or communicate, and remained in bed throughout the day.

33. On November 21, 2023, Waring-Starnes remained ill and sought emergency medical treatment at Saint Barnabas Hospital.

34. Upon returning to work on November 22, 2023, Waring-Starnes informed her supervisors of the serious health condition that had prevented her from working.

35. On November 30, 2023, Waring-Starnes participated in a virtual meeting with Deputy Chief of Programs Sabrina Lopez and Chief People Officer Evans-Pickney. During that meeting, Lopez and Evans-Pickney informed her that she would receive a written disciplinary action for allegedly failing to properly call out of work on November 20 and 21.

36. Waring-Starnes was shocked that Jericho Project would discipline her for involuntary medical absences, particularly where, upon information and belief, non-Black coworkers were not similarly disciplined for comparable absences.

37. Waring-Starnes responded that the discipline appeared retaliatory and based on her having been ill following her protected complaints. Evans-Pickney denied that characterization and asserted that the discipline was based solely on communication issues.

38. In December 2023, Waring-Starnes was diagnosed with pneumonia, confirming the cause of her sudden decline in health and need for medical leave.

39. On December 19, 2023, Straka stated that she would arrange a meeting in the new year with Katz and Waring-Starnes.

40. Thereafter, Straka met with Waring-Starnes a second time. Waring-Starnes stated that her complaints of race discrimination were not being meaningfully addressed.

41. Straka responded that she understood Waring-Starnes's concerns and stated that steps would be taken to prevent similar issues in the future, including recording HR meetings. Straka further stated that her investigation confirmed Katz's conduct was inappropriate, though she again attempted to excuse it as nervous laughter. She did not indicate that Katz would be disciplined.

42. Waring-Starnes requested that Katz at least provide a meaningful apology. Straka stated that she would attempt to coordinate one and later scheduled a meeting for January 10, 2024.

43. At the January 10, 2024 meeting, Katz read a prepared statement disputing aspects of Waring-Starnes's account but apologized. He stated that laughing at her was "something older adults do."

44. When Waring-Starnes responded that age was not an excuse and that Katz should have handled the situation differently, Katz became irate, pointed his finger at her and blamed his conduct on her "attitude" and interruptions.

45. Waring-Starnes found this accusation offensive and racially charged, invoking harmful stereotypes of Black women as aggressive or hostile.

46. Straka intervened and stated that Katz's accusations did not align with what he had previously told her. Concerned that the meeting had become unproductive, Waring-Starnes asked whether these interactions would be used against her in future performance evaluations. Straka responded that they would not.

47. On January 12, 2024, Waring-Starnes submitted a letter of intent to participate in Hunter College's Mental Health Scholarship Program / One-Year Residency ("MHSP/OYR").

48. On January 17, 2024, the Division of Mental Health informed Waring-Starnes that she was eligible to proceed with the MHSP/OYR application process. That same day, Lopez emailed Waring-Starnes congratulating her and wishing her "the best of luck."

49. On January 26, 2024, Waring-Starnes emailed Zakers, Straka, and CEO Tori Lyon reiterating her hostile work environment complaint, expressing dissatisfaction with Katz's conduct and the handling of her complaint, and stating her concern about retaliation.

50. That same day, Zakers confirmed receipt and stated she would follow up within a week. No follow-up occurred.

51. Instead, on February 1, 2024, Jericho Project issued Waring-Starnes a First Written Warning for "Lack of Communication, Calling Out Protocol, and Program Performance."

52. The First Written Warning cited Waring-Starnes's November 20 and 21 absences due to illness, acknowledged that she was in the emergency room, but asserted that her medical emergency did not excuse noncompliance with the call-out policy.

53. In February 2024, Lopez informed Waring-Starnes that she was no longer eligible for the MHSP/OYR scholarship due to the First Written Warning.[1]

54. Moreover, in June 2024, Jericho Project began offering training for staff to become certified in Low-Income Housing Tax Credit compliance. However, in or about July 2024, Waring-Starnes's supervisor denied her application for this certification, citing the First Written Warning.

55. On November 12, 2024, Waring-Starnes filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation.

56. On December 17, 2024, Jericho Project issued Waring-Starnes a Final Written Warning for alleged "Unprofessional Communications."

57. The Final Written Warning cited an email in which Waring-Starnes stated, "I am confused that I am notified of procedural changes in the program I direct by a newly hired housing specialist/leasing manager," and vaguely alleged disrespectful conduct during a meeting without specifying the remarks at issue.

---

[1] The MHSP/OYR Program requires formal authorization from the employing nonprofit agency, including executive approval, an approved field placement, flexibility in the work schedule, DOHMH-contracted provider status, and a commitment to employ the participant during the program and for two years afterward.

58. On January 27, 2025, Waring-Starnes submitted a written rebuttal disputing the Final Written Warning and asserting that the discipline was retaliatory.

59. On February 13, 2025, Jericho Project issued an Extended Final Warning, criticizing Waring-Starnes for attendance at meetings, copying her personal email on correspondence—a practice previously permitted without discipline—and subjective allegations of "lack of engagement" and "poor body language."

60. On February 14, 2025, Jericho Project submitted a position statement to the EEOC denying Waring-Starnes's claims.

61. On March 6, 2025, Jericho Project terminated Waring-Starnes, citing the reasons previously documented in her disciplinary warnings.

FIRST CAUSE OF ACTION
Discrimination in violation of § 1981

62. Waring-Starnes repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

63. Defendant unlawfully discriminated against Waring-Starnes in the terms and conditions of her employment by subjecting her to disparate treatment, hostile work environment and termination on the basis of race in violation of § 1981.

64. As a result, Waring-Starnes has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

65. Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Waring-Starnes's federally protected rights.

66. Waring-Starnes is entitled to an award of emotional distress damages, compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

## SECOND CAUSE OF ACTION
Retaliation in violation of § 1981

67. Waring-Starnes repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

68. Defendant unlawfully retaliated against Waring-Starnes for her protected discrimination complaints by subjecting her to disparate treatment, hostile work environment and termination in retaliation for her protected activities, in violation of § 1981.

69. As a result, Waring-Starnes has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

70. Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Waring-Starnes's federally protected rights.

71. Waring-Starnes is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

## THIRD CAUSE OF ACTION
Discrimination in violation of the NYSHRL

72. Waring-Starnes repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

73. Defendant unlawfully discriminated against Waring-Starnes in the terms and conditions of her employment by subjecting her to disparate treatment, hostile work environment, and termination on the basis of her race and gender in violation of the NYSHRL.

74. As a result, Waring-Starnes has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

75. Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Waring-Starnes's rights.

76. Waring-Starnes is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

## FOURTH CAUSE OF ACTION
Retaliation in violation of the NYSHRL

77. Waring-Starnes repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

78. Defendant unlawfully retaliated against Waring-Starnes in the terms and conditions of her employment on the basis of her legally protected activities, in violation of NYSHRL.

79. As a result, Waring-Starnes has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

80. Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Waring-Starnes's rights.

81. Waring-Starnes is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees and costs.

## FIFTH CAUSE OF ACTION
Discrimination in violation of the NYCHRL

82. Waring-Starnes repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

83. Defendant unlawfully discriminated against Waring-Starnes in the terms and conditions of her employment by subjecting her to disparate treatment, hostile work

environment, and termination on the basis of her race and gender in violation of the NYCHRL.

84. As a result, Waring-Starnes has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

85. Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Waring-Starnes's rights.

86. Waring-Starnes is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees, and costs.

SIXTH CAUSE OF ACTION
Retaliation in violation of the NYCHRL

87. Waring-Starnes repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

88. Defendant unlawfully retaliated against Waring-Starnes in the terms and conditions of her employment on the basis of her legally protected activities, in violation of NYCHRL.

89. As a result, Waring-Starnes has suffered emotional distress and has incurred compensatory damages, economic damages, attorney's fees, and costs.

90. Defendant willfully engaged in discriminatory practices with malice and/or reckless indifference to Waring-Starnes's rights.

91. Waring-Starnes is entitled to an award of compensatory damages, economic damages, punitive damages, attorney's fees and costs.

## SEVENTH CAUSE OF ACTION
Retaliation under the NYLL

92. Waring-Starnes repeats and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

93. Waring-Starnes engaged in protected activity under NYLL § 740 by making good-faith complaints regarding conduct she reasonably believed violated law, rule, or regulation.

94. Defendant unlawfully retaliated against Waring-Starnes in the terms and conditions of her employment, including, *inter alia*, terminating her employment, in violation of NYLL § 740.

95. As a result, Waring-Starnes has suffered loss of wages, emotional distress, and other compensatory and economic damages, and has incurred attorneys' fees and costs.

96. Defendant willfully engaged in retaliatory conduct with malice and/or reckless indifference to Waring-Starnes's rights.

97. Waring-Starnes is entitled to an award of compensatory damages, economic damages, liquidated damages, punitive damages where permitted, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, it is respectfully requested that the Court enter judgment for Waring-Starnes and against Defendant, in amounts to be determined by the finder of fact, awarding economic, compensatory, and punitive damages, attorney's fees, and costs, and granting such other relief as may be just.

JURY DEMAND

Pursuant to FRCP § 38(b), Waring-Starnes demands a trial by jury.

Dated: New York, New York
March 16, 2026

LIPSKY LOWE LLP

s/ Douglas B. Lipsky
Douglas B. Lipsky
Travis Pierre-Louis
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830
212.392.4772
doug@lipskylowe.com
travis@lipskylowe.com
*Attorneys for Plaintiff Waring-Starnes*